UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARY A. JARDIN,<br><br>                    Plaintiff,<br><br>vs.<br><br>DATAllegro, INC. and STUART FROST,<br><br>                    Defendants. | **CASE NO: 10-CV-2552-IEG (WVG)**<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT AND GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 16] |

    Presently before the Court is Defendants' motion (1) for a more definite statement as to Counts I and II of Plaintiff's Complaint pursuant to Rule 12(e), and (2) to dismiss Counts III through VI pursuant to Rule 12(b)(6). [Doc. No. 16.] For the reasons stated below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion.

## BACKGROUND

    This is the second case filed by Plaintiff Cary A. Jardin ("Plaintiff" or "Jardin") against Defendants DATAllegro, Inc. ("DATAllegro") and Stuart Frost ("Frost," collectively "Defendants"). The two cases concern the same parties and substantially the same subject matter, and the Court has determined the two cases related. [See Doc. Nos. 5 & 6.]

1    Plaintiff founded XPrime, Inc. ("XPrime"), a company involved in database technology.  In
2  2002 and 2003, Plaintiff developed technology at XPrime that "facilitated high-performance
3  computing on a scalable basis."  [Compl. ¶ 11.]  Plaintiff was assigned the rights to all of XPrime's
4  intellectual property in 2005.  [Id. ¶ 12.]
5    In January 2003, Plaintiff filed two patent applications: U.S. Patent and Trademark Office
6  ("USPTO") Application Numbers 10/345,504 (the "'504 Application") and 10/345,811 (the "'811
7  Application").  [Compl. ¶ 13.]  Neither application was publically available until the USPTO published
8  the '504 Application on August 12, 2004, and the '811 Application on February 10, 2005.  [Id. ¶¶ 14,
9  20-21.]
10   Defendant Frost was hired as the CEO of XPrime in March 2003.  By April 2003, XPrime
11 "informed Frost that he was not employed by XPrime."  [Id. ¶ 25.]  There was some dispute as to the
12 nature of the relationship between Frost and XPrime until "their relationship came to a formal
13 conclusion in July or August of 2003."  [Id. ¶ 26.]  Between March and August 2003, Frost had access
14 to the confidential information contained in the '504 and '811 Applications.  [Id. ¶¶ 22-23, 27-37, 41-
15 43.]  Plaintiff alleges Frost misappropriated the intellectual property described in those applications.
16   On June 26, 2003, Frost incorporated his own company, DATAllegro, allegedly a competitor of
17 XPrime.  [Id. ¶¶ 38-40.]  On February 21, 2004, Frost filed with the USPTO provisional patent
18 application number 60/546,428 (the "'428 Provisional Application"), which identified Frost as the sole
19 inventor.  [Id. ¶¶ 44, 53.]  On February 17, 2005, Frost filed nonprovisional application number
20 11/059,510 (the "'510 Application"), which claimed priority to the '428 Provisional Application.  [Id.
21 ¶ 61.]
22   On October 19, 2010, the '510 Application issued as U.S. Patent Number 7,818,349 (the "'349
23 Patent").  [Id. ¶ 79.]  The '349 Patent was assigned to Defendant DATAllegro.
24   Plaintiff alleges the '349 Patent is based on the technology described in the '504 and '811
25 Applications.  As a result, Plaintiff claims to be the true inventor of the '349 Patent.
26   Claims I and II of Plaintiff's complaint seek to correct inventorship and ownership of the '349
27 Patent.  In claims III through VI, Plaintiff asserts claims stemming from Defendants' alleged
28

2

misappropriation of Plaintiff's intellectual property: conversion, constructive trust, accounting and unjust enrichment, and slander of title.

Defendants' current motion seeks a more definitive statement with regard to claims I and II, the inventorship and ownership claims. The motion also seeks to dismiss the claims III through VI, arguing they are preempted by California trade secret law.

## **LEGAL STANDARD**

### A.     Motion for a More Definite Statement

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "The class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small." Kennedy v. Full Tilt Poker, 2010 WL 1710006, at *2-3 (C.D. Cal. Apr. 26, 2010) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1376 at 311 (3d ed. 2004)). "A motion for more definite statement is used to provide a remedy for an unintelligible pleading rather than a correction for lack of detail." N. Cnty. Commc'ns Corp. v. Sprint Commc'ns Co., L.P., 2010 WL 1499289, at *1 (S.D. Cal. Apr. 12, 2010). A motion for a more definite statement may be denied where the detail sought is obtainable through discovery. C.B. v. Sonora Sch. Dist., 691 F. Supp. 2d 1170, 1190-91 (E.D. Cal. 2010).

### B.     Motion to Dismiss for Failure to State a Claim

"A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint." St. James v. JP Morgan Chase Bank Corp., 2010 WL 5349855, 1-2 (S.D. Cal. Dec. 21, 2010). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted).

The court must accept all factual allegations pleaded in the complaint as true and construe them and draw all reasonable inferences in favor of the nonmoving party. See Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The complaint, however, must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (2009).

A court does not need to accept "legal conclusions" as true. See Iqbal, 129 S. Ct. at 1949. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted).

"[D]ismissal with prejudice is proper" where "the defect appears to not be curable by amendment." Whitty v. First Nationwide Mortg. Corp., 2007 WL 628033, at *6 (S.D. Cal. Feb. 26, 2007) (citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1108 (9th Cir. 2003).

## DISCUSSION

### A.  Claims I and II, Regarding Inventorship and Ownership of the '349 Patent

Defendants challenge Counts I and II as lacking a clear statement as required under Rule 12(e). Specifically, Defendants assert Plaintiff must identify the particular contributions he allegedly made to the '349 patent. Plaintiff responds that he has made sufficiently specific allegations to satisfy Rule 12(e).

Rule 12(e) provides a remedy for unintelligible pleadings; it does not provide correction for lack of detail or a substitute for discovery. N. Cnty. Commc'ns, 2010 WL 1499289, at *1. Plaintiff's Complaint identifies the patent at issue and alleges inventorship of intellectual property underlying the patent. That is sufficient to satisfy the requirements of Rule 12(e). Defendants will have the opportunity to obtain more specific information during discovery.

Accordingly, the Court **DENIES** Defendants' motion for a more definite statement with regard to Counts I and II.

### B.  Claims III through VI, Regarding Alleged Misappropriation of Intellectual Property

Counts III through VI relate to misappropriation of property rights. Plaintiff filed two patent applications in 2003, the '504 and '811 Applications. Defendant Frost left Plaintiff's employ to start his own company in 2003. Plaintiff alleges that, during his employment with Plaintiff, Frost had access to Plaintiff's applications before they were published by the Patent Office. Defendant filed his own patent application in 2004, the '428 Provisional Application, which Plaintiff alleges contains

confidential information from Plaintiff's then-unpublished '504 and '811 Applications.  Plaintiff argues these claims relate to the inventorship dispute, while Defendants argue they are "thinly veiled trade secret misappropriation" claims.

This dispute turns on the nature of Plaintiff's property interest in "confidential information" during the period of time between the filing and the publication of his patent applications. "[I]nformation is not property unless some law makes it so."  Mattel, Inc. v. MGA Entertainment, Inc., ---F. Supp. 2d---, 2010 WL 5422504, at *21 (C.D. Cal. Dec. 27, 2010) (quoting Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 239 (2010), *overruled on other grounds in* Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 337 (2011)).  Information in patent applications can retain trade secret status, but that protection is lost when the patent application publishes.  Ultimate Timing, LLC v. Simms, 715 F. Supp. 2d 1195, 1207 (W.D. Wash. 2010); see also BondPro Corp. v. Siemens Power Generation, Inc., 463 F.3d 702, 707 (7th Cir. 2006) ("Publication in patent destroys the trade secret . . . ."); Neo Gen Screening, Inc. v. TeleChem Int'l, Inc., 69 Fed. Appx. 550, 556 (Fed. Cir. 2003).  California law recognizes no property right in "confidential information" outside of trade secrets law.  Mattel, Inc., 2010 WL 5422504, at *21.

Once property rights are determined to fall within trade secret law, they are protected by the California Uniform Trade Secrets Act ("CUTSA").  Cal. Civ. Code § 3426 *et seq*.  CUTSA preempts all claims "based upon the misappropriation of . . . confidential information, whether or not that information rises to the level of a trade secret."  Mattel, 2010 WL 5422504 at *54.  Furthermore, the CUTSA preempts all common law claims "based on the same nucleus of facts" as a claim for misappropriation of trade secrets.  K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc., 171 Cal. App. 4th 939, 958 (2009).  Under California law, "California's Uniform Trade Secrets Act 'occupies the field' of common law claims based on the misappropriation of a trade secret."  Id. at 957.

Because they stem from alleged misappropriation of confidential information, claims III through VI are preempted by the CUTSA.[1]  Thus, they are dismissed.  The Court, however, grants

---

[1] The Court also notes that constructive trust (claim IV) and unjust enrichment (part of claim V) are not causes of action.  A constructive trust is a remedy, not an independent cause of action. Watkinson v. MortgageIT, Inc., 2010 WL 2196083, at *9 (S.D. Cal. June 1, 2010) (citing Batt v. City and Cnty. of San Francisco, 155 Cal. App. 4th 64, 82 (2007)).  Under California law, "there is no cause of action for unjust enrichment; it is a 'general principle, underlying various legal doctrines and

Plaintiff leave to amend, if he can identify a cognizable property interest that lies outside of trade secret law.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion.  The Court **DENIES** Defendants' motion for a more definite statement regarding claims I and II.  The Court **GRANTS** Defendants' motion and **DISMISSES WITHOUT PREJUDICE** claims III through VI.

**IT IS SO ORDERED.**

**DATED:** 4/11/11

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

remedies, rather than a remedy itself.'"  Bosinger v. Belden CDT, Inc., 358 Fed. Appx. 812, 815 (9th Cir. 2009) (quoting Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2003)).