1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  DARREN J. ROBBINS (168593)
   REGIS C. WORLEY, JR. (234401)
3  CODY R. LeJEUNE (249242)
   655 West Broadway, Suite 1900
4  San Diego, CA  92101
   Telephone:  619/231-1058
5  619/231-7423 (fax)
   darrenr@rgrdlaw.com
6  rworley@rgrdlaw.com
   clejeune@rgrdlaw.com
7        – and –
   JOHN C. HERMAN
8  RYAN K. WALSH
   3424 Peachtree Road, N.E.
9  Suite 1650
   Atlanta, GA  30326
10  Telephone:  404/504-6500
   404/504-6501 (fax)
11  jherman@rgrdlaw.com
   rwalsh@rgrdlaw.com
12
   Attorneys for Plaintiff
13
                    UNITED STATES DISTRICT COURT
14
                  SOUTHERN DISTRICT OF CALIFORNIA
15

| | |
|---|---|
| CARY A. JARDIN, | No. 3:10-cv-02552-IEG-WVG |
| Plaintiff, | FIRST AMENDED COMPLAINT FOR CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. §256 AND RELATED ACTIONS |
| vs. | |
| DATALLEGRO, INC. and STUART FROST, | |
| Defendants. | |

622614_1

Plaintiff Cary A. Jardin ("Jardin") hereby makes this verified complaint against defendants DATAllegro, Inc. ("DATAllegro") and Stuart Frost ("Frost") (collectively referred to as "Defendants") and in support hereof respectfully shows the Court as follows:

## PARTIES

1.     Plaintiff Cary Jardin is a resident of California, residing at 14580 Hidden Knoll Road, Poway, California 92064.

2.     Defendant DATAllegro is a Delaware corporation, having its principal place of business at 85 Enterprise, Second Floor, Aliso Viejo, California 92656.  DATAllegro may be served with process through its Agent for Service of Process, Corporation Service Company, at 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833.

3.     Defendant Frost is a resident of the State of California and may be served at 30 High Bluff, Laguna Niguel, California 92656.

## JURISDICTION AND VENUE

4.     This is an action for correction of inventorship arising under the patent laws of the United States, 35 U.S.C. §256, with related counts.

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1338(a).

6.     Defendants are subject to this Court's specific and general personal jurisdiction because they are residents of the State of California and, pursuant to due process and/or the California Long Arm Statute, due at least to their conducting substantial business in this forum, including: (i) at least a portion of the activities alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in California and this District; and (iii) being parties to ongoing litigation pending before this Court.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391 and 1400(b).  Defendants have done business in this District and committed the acts alleged herein in this District, and continue to improperly hold Jardin's property in this District, all of which entitle plaintiff to relief.

**BACKGROUND OF DISPUTE**

8.  This dispute concerns the inventorship of United States Patent Number 7,818,349 (attached as Exhibit A) and related issues.

9.  Jardin is a well respected and highly successful database architecture inventor.  He has more than 20 patents and patent applications in his name.  In 1997, Jardin founded IPivot, Inc., a networking company, which was eventually sold to Intel for approximately $500 million.  After this sale was completed, Jardin assumed the role of chief technology officer for Intel's network equipment division.

10.  Jardin founded XPrime, Inc. ("XPrime"), a company involved in database technology.

11.  In 2002 and 2003, Jardin developed technology at XPrime that facilitated high-performance computing on a scalable basis.

12.  In 2005, Jardin received by assignment the rights to all of XPrime's intellectual property.

13.  In January of 2003, Jardin filed two United States patent applications.  The patent applications are identified by Application Numbers 10/345,504 and 10/345,811 (the "'504 application" and the "'811 application" respectively – collectively the "earlier-filed Jardin applications").  The title of the invention of the '504 application is "System and method for cooperate database management."  The title of the invention of the '811 application is "System and method for distributed database processing in a clustered environment."

14.  Neither the '504 application nor the '811 application were publicly available in 2003.

15.  The '504 application discloses a method of increasing database performance by incrementally adding more compute resources.

16.  The '504 application discloses a system having a master database system and a slave database system, and wherein the slave database system may contain identical copies of information stored on the master database system.

17.  The '811 application discloses a method of increasing database performance by distributing database performance load across a group or cluster of computers.

18.    The '811 application discloses a system in which a database load is distributed across all nodes in the cluster.

19.    The '811 application further discloses the submission of database queries in parallel to the nodes in the cluster and the reassembly of the results from those nodes.

20.    On August 12, 2004, the '504 application was published by the United States Patent and Trademark Office ("USPTO") as Publication Number US 2004/0158550 and was publicly available.

21.    On February 10, 2005, the '811 application was published by the USPTO as Publication Number US 2005/0033818 and was publicly available.

22.    Between March of 2003 and August of 2003, Frost was in some type of a relationship with XPrime.

23.    In March of 2003, Frost was hired as the CEO of XPrime.

24.    At least as early as April of 2003, Frost began scheming to start a business that would compete with XPrime.

25.    In April of 2003, XPrime informed Frost that he was not employed by XPrime.

26.    Although Frost and XPrime disputed the nature of their relationship, their relationship came to a formal conclusion in July or August of 2003.

27.    In 2003, Frost had access to the earlier-filed Jardin applications, XPrime source code, XPrime products, XPrime financial information, XPrime information and know-how embodied in documents and things, and other XPrime intellectual property.

28.    On numerous occasions between March 2003 and August 2003, Frost communicated with Jardin regarding the earlier-filed Jardin applications.

29.    On numerous occasions between March 2003 and August 2003, Frost communicated with Jardin regarding the XPrime technology.

30.    On numerous occasions between March 2003 and August 2003, Frost communicated with Jardin regarding the XPrime source code.

31.    Frost learned non-public information from Jardin and XPrime in 2003.

32.    Frost read the '504 application in 2003.

33.     Frost read the '811 application in 2003.

34.     Frost had the earlier-filed Jardin applications in his possession or control in 2003.

35.     Jardin explained the XPrime source code to Frost in 2003.

36.     Frost read the XPrime source code in 2003.

37.     Frost had XPrime source code in his possession or control in 2003.

38.     Frost incorporated DATAllegro in 2003.

39.     On June 26, 2003, DATAllegro was incorporated in Delaware.

40.     DATAllegro was a competitor of XPrime.

41.     Frost had access to XPrime intellectual property during the period between the time DATAllegro was incorporated in Delaware and the time Frost concluded his relationship with XPrime.

42.     Frost had access to non-public information regarding the earlier-field Jardin applications during the period between the time DATAllegro was incorporated in Delaware and the time Frost concluded his relationship with XPrime.

43.     After concluding his relationship with XPrime, Frost maintained possession or control of intellectual property belonging to XPrime.

44.     On February 21, 2004, Frost filed a provisional patent application with the USPTO. The title of the invention was "An Ultra-Shared-Nothing Parallel Database." This provisional patent application is identified by Application Number 60/546,428 (the "'428 provisional application").

45.     The '428 provisional application discloses a method of increasing database performance.

46.     The '428 provisional application claimed a method of increasing database performance.

47.     The '428 provisional application discloses a system having a master node and slave nodes, and wherein the slave nodes may contain identical copies of information stored on the master node.

48.     The '428 provisional application claimed a system having a master node and slave nodes, and wherein database content is partitioned across slave nodes.

1    49.    The '428 provisional application discloses a system in which tables are divided up

2  across the slave nodes.

3    50.    The '428 provisional application claimed a system in which tables are divided up

4  across the slave nodes.

5    51.    The '428 provisional application discloses the submission of database queries in

6  parallel to the slave nodes and the processing of the results from those slave nodes.

7    52.    Frost represented to the USPTO that he was the sole inventor of the invention

8  disclosed in the '428 provisional application.

9    53.    The '428 provisional application identifies Frost as the sole inventor.

10    54.    The earlier-filed Jardin applications were filed with the USPTO prior to the filing of

11  the '428 provisional application.

12    55.    Jardin was not identified as an inventor of the '428 provisional application.

13    56.    Frost did not provide Jardin with a copy of the '428 provisional application prior to

14  the time the '428 provisional application became publicly available.

15    57.    Frost withheld from Jardin the existence of the '428 provisional application during

16  the entire time before the '428 provisional application became publicly available.

17    58.    The '428 provisional application was assigned from Frost to DATAllegro.

18    59.    On February 17, 2005, an international application under the Patent Cooperation

19  Treaty was filed on behalf of DATAllegro and named Frost as the inventor.  The title of the

20  application was "Ultra-Shared-Nothing Parallel Database."  The international application is

21  identified by International Application Number PCT/US2005/005199 (the "PCT application").  The

22  PCT application claims priority to the '428 provisional application.

23    60.    DATAllegro has sought patent protection via the PCT application in Europe, Mexico,

24  Korea, Japan, China, and elsewhere.

25    61.    On February 17, 2005, a non-provisional patent application was filed with the

26  USPTO on behalf of Frost.  The title of the invention was "Ultra-Shared-Nothing Parallel Database."

27  The non-provisional patent application is identified by Application Number 11/059,510 (the "'510

28  application").  The '510 application claims priority to the '428 provisional application.

62.     The '510 application discloses a system and method of increasing database performance.

63.     The '510 application claimed a system and method of increasing database performance.

64.     The '510 application discloses a system having a master node and slave nodes, and wherein the slave nodes contain duplicated copies of information stored on the master node.

65.     The '510 application claimed a system having a master node and slave nodes, and wherein the slave nodes contain duplicated copies of information stored on the master node.

66.     The '510 application discloses a system in which tables are distributed across the slave nodes.

67.     The '510 application claimed a system in which tables are distributed across the slave nodes.

68.     The '510 application further discloses the submission of database queries in parallel to the slave nodes and the processing of the results from those slave nodes.

69.     The '510 application contains information originating from Jardin.

70.     The '510 application contains information first learned by Frost from Jardin in 2003.

71.     The '510 application contains intellectual property that Frost obtained from XPrime.

72.     The non-public information disclosed to Frost in 2003 provided enabling technology for the alleged inventions set forth in the '510 application.

73.     Frost was identified as the sole inventor of the invention of the '510 application.

74.     Jardin was not listed as an inventor of the '510 application.

75.     The '510 application was assigned from Frost to DATAllegro.

76.     During the prosecution of the '510 application, the claims of that application were amended.

77.     At no time during the prosecution of the '510 application was Jardin identified as an inventor.

78.     Jardin had no actual knowledge of the '510 application until 2008.

79.     On October 19, 2010, the '510 application issued as United States Patent Number 7,818,349 (the "'349 patent").

80.     Jardin made a contribution to the subject matter of one or more claims of the '349 patent.

81.     One or more claims of the '349 patent includes subject matter that was previously XPrime intellectual property.

82.     DATAllegro has the right to exclude others, including Jardin, from making, using, or selling the invention claimed in the '349 patent.

83.     Claim 1 of the '349 patent recites in-part "a master node; a plurality of slave nodes . . . means for distributing a database across said plurality of slave nodes . . . the plurality of dimension tables are partitioned and stored across said plurality of slave nodes . . . wherein up to a plurality of the dimension tables . . . are partitioned and stored across said plurality of slave nodes."

84.     The '811 application discloses at paragraph [0011]:  "The goal of the present invention is to distribute the database load across all nodes in the cluster.  One method of load distribution is uniform distribution.  In this method, each node processes 1/N of the load, where N is the number of nodes in the system.  To produce this result, each node will be responsible for 1/N of the information stored in the entire system."

85.     The '811 application discloses at paragraph [0015]:  "In this way, each node will process and receive N separate (1/N) pieces to form 100% (N×1/N=100%) of the non-base sets. Each 1/N sub-set of the non base sets is then applied against the 1/N base set owned by each cluster. The result being, once each node has searched for matching criteria from the 1/N base set and processed all N of the 1/N subsets sent by each node in the cluster, each node then contains 1/N of the final answer.  The 1/N final answer is formulated, the result set is sent and gathered at the originating request node to be cumulated and sent as a result to the database client."

86.     Claim 1 of the '349 patent recites in-part "a master node; a plurality of slave nodes . . . means for distributing a database across said plurality of slave nodes . . . in addition to being duplicated and stored on each of said plurality of slave nodes."

87.     The '504 application discloses at Figure 2 a "Master Database Server" and a "Slave Database Server."

88.     The '504 application discloses at paragraph [0012]:  "For this reason, the master database must be configured with a method to locally store all provided information as well as delegate the information storage to the slave system.  In this way, both machines contain identical copies of the stored information with the stored master information used for reliable persistent storage, and the slave system used for high speed information retrieval."

89.     The '504 application discloses at paragraph [0012]:  "In the context of the current invention, views are used to hide the existence of the slave database system, and triggers are used to store the information on the master and slave systems from a single request for information storage . . . . The defined view configuration provides ability to route information retrieval requests through the master system for fulfillment to the slave system for fulfillment."

90.     The '504 application discloses at paragraph [0016]:  "At this point, the defined 'trigger' application logic is invoked to duplicate the write operation to both the local, master, data storage and the remote, slave, data storage."

91.     During the course of litigation with Jardin in the matter of *Jardin v. DATAllegro, Inc.*, *et al.*, No. 3:08-cv-01462 (S.D. Cal.), Defendants indicated that the earlier-filed Jardin applications were not prior art to the '510 application.

92.     Frost and others involved in the prosecution of the '510 application were aware of the earlier-filed Jardin applications during the prosecution of the '510 application.

93.     Neither Frost nor anyone else involved in the prosecution of the '510 application disclosed the '504 application to the USPTO in an Information Disclosure Statement prior to the issuance of the '349 patent.

94.     Neither Frost nor anyone else involved in the prosecution of the '510 application disclosed the '811 application to the USPTO in an Information Disclosure Statement prior to the issuance of the '349 patent.

95.     DATAllegro was acquired by Microsoft Corporation ("Microsoft") in 2008.

96.     As a result of the 2008 acquisition, Frost and other investors in DATAllegro received valuable consideration.

97.     Jardin received no compensation for the assignment of the '510 application, the '428 provisional application, or the acquisition of DATAllegro.

98.     Following the issuance of the '349 patent, Jardin may be prevented from making, using, or selling the invention claimed in the '349 patent.

99.     Jardin also has suffered a reputational injury as a result of being omitted as an inventor of the '349 patent.

**COUNT I**
**(For Correction of Inventorship of the '349 Patent)**

100.     Jardin hereby repeats and realleges ¶¶1-99 and incorporates the same into this Count by reference.

101.     This Court may correct the inventorship of the '349 patent under 35 U.S.C. §256.

102.     The error of failing to list Jardin as an inventor of the '349 patent arose with no deceptive intent on Jardin's part.

103.     Prior to the filing of the '428 provisional application, Frost received non-public information originating from Jardin and concerning the subject matter of the '349 patent.

104.     Prior to the filing of the '428 provisional application, Frost received non-public information concerning the subject matter of the '349 patent that he first learned from Jardin.

105.     Jardin contributed to the inventions set forth in the '349 patent by communicating to Frost non-public information and know-how relating to database technology.

106.     Jardin is entitled to a judgment under 35 U.S.C. §256 ordering correction of the '349 patent to substitute or add Jardin as an inventor, directing DATAllegro to take appropriate action to change the inventorship designation and substitute or add Jardin as an inventor on the PCT application and any applications and patents issuing therefrom, and for damages and such other relief as the Court may deem necessary to compensate Jardin.

**COUNT II**
**(Declaration that Jardin is an Owner of the '349 Patent)**

107.    Jardin hereby repeats and realleges ¶¶1-106 and incorporates the same into this Count by reference.

108.    Prior to the filing of the '428 provisional application, Frost had knowledge of the earlier-filed Jardin applications.

109.    Subject matter of the earlier-filed Jardin applications is found in the '349 patent.

110.    Intellectual property from the earlier-filed Jardin applications is found in the '349 patent.

111.    Frost was aware that intellectual property from the earlier-filed Jardin applications is found in the '349 patent.

112.    Jardin's intellectual property is included in the claims of the '349 patent.

113.    During the prosecution leading to the issuance of the '349 patent, the pending claims were amended to include Jardin's intellectual property.

114.    Because Jardin's intellectual property was included in the '349 patent, Jardin has a property interest in the '349 patent.

115.    Because Jardin's intellectual property was included in the invention claimed in the '349 patent, Jardin has a property interest in the '349 patent.

116.    Due to Jardin's property interest in the '349 patent, any purported assignment or sale of the '349 patent requires Jardin's consent.

117.    Jardin is either the sole inventor or a co-inventor of the subject matter claimed in the '349 patent.

118.    Jardin did not consent to sale or assignment of the '349 patent to DATAllegro or any other entity.

119.    Any purported sale or assignment of the '349 patent to DATAllegro or any other entity is inoperative absent Jardin's consent.

120.    Frost was aware that any purported sale or assignment of the '349 patent to DATAllegro or any other entity is inoperative absent Jardin's consent.

1    121.    Any purported assignment of the '349 patent is void.

2    122.    DATAllegro purports to be the assignee or owner of the entirety of the '349 patent.

3    123.    DATAllegro is neither the assignee nor owner of the '349 patent, in whole or in part.

4    124.    Frost did not act in good faith when he attempted to transfer 100% ownership interest

5    in property for which he knew he was not entitled to 100% ownership.

6    125.    Jardin is entitled to a judgment finding that he has an ownership interest in the '349

7    patent, any purported sale or assignment of the '349 patent is null and void absent Jardin's consent,

8    Frost's acts in bad faith preclude the return of the '349 patent to his possession, and Jardin is entitled

9    to full ownership of the '349 patent, as well as any other relief as this Court may deem necessary to

10   make Jardin whole.

11                                **COUNT III**
                                **(Slander of Title)**
12

13   126.    Jardin hereby repeats and realleges ¶¶1-125 and incorporates the same into this Count

14   by reference.

15   127.    The claimed invention of the '349 patent is directed to systems, methods and

16   computer executable processes that replicate and distribute database tables, as described in the '349

17   patent's 29 claims (the "CLAIMED INVENTION").

18   128.    Jardin, either alone or in collaboration with Frost, discovered the CLAIMED

19   INVENTION.

20   129.    Jardin is either the true sole inventor or at the very least a true co-inventor of the

21   CLAIMED INVENTION.

22   130.    Jardin has ownership of and title to the CLAIMED INVENTION by virtue of his

23   inventorship of the CLAIMED INVENTION.

24   131.    Frost signed a declaration, that was sent to the USPTO on his behalf, acknowledging

25   that a willful false statement made to the USPTO may jeopardize the validity of the patent

26   application or any patent issued therefrom.

27

28

132.    Frost knew or should have known that a false statement made to the USPTO would cast doubt on validity of the CLAIMED INVENTION, thereby causing a reduction in value of the CLAIMED INVENTION.

133.    In written communications to the USPTO, Frost falsely identified himself as the sole inventor of the CLAIMED INVENTION.

134.    The USPTO reasonably understood the communications by Frost regarding the inventorship of the CLAIMED INVENTION to be statements of fact.

135.    DATAllegro, through its agents and representatives, provided information to the USPTO during the prosecution of the '510 application.

136.    DATAllegro knew or should have known that a false statement made to the USPTO would cast doubt on validity of the CLAIMED INVENTION, thereby causing a reduction in value of the CLAIMED INVENTION.

137.    In written communications to the USPTO, DATAllegro falsely identified Frost as the sole inventor of the CLAIMED INVENTION and withheld information regarding Jardin's inventorship of the CLAIMED INVENTION.

138.    The USPTO reasonably understood the communications by DATAllegro regarding the inventorship of the CLAIMED INVENTION to be statements of fact.

139.    Frost has overtly and covertly acted with malice, ill will, and spite toward Jardin in a variety of ways, including, but not limited to, making false statements to the USPTO claiming to be the sole inventor of the CLAIMED INVENTION despite having knowledge or serious doubts to the contrary, as well as by making other disparaging statements to third parties, and such malice, ill will and spite can be inferred or implied from Frost's behavior and actions in a variety of ways including, but not limited to, stating to a third party: that Jardin was "unpredictable, and unmanageable and [believed] that he is above everyone else around him;" that Jardin engaged in "despicable conduct;" and that "JARDIN, a Frenchman, . . . never intended on following through with [his] promises [to Frost] since JARDIN, apparently of French descent, found it objectionable to work with CEO FROST since he was British."

140.    In July of 2003, Frost communicated that he sought "to punish" Jardin.

141.   Consistent with Frost's stated desire "to punish" Jardin, Frost's written statement to the USPTO claiming to be the sole inventor of the CLAIMED INVENTION was maliciously made with ill will, with knowledge of its falsity, or with reckless disregard of whether it was true or false.

142.   Frost never had authority to submit a false claim of inventorship in violation of 35 U.S.C. §115.

143.   Under the leadership and direction of its CEO Frost, and consistent with Frost's stated desire "to punish" Jardin, DATAllegro's written statement to the USPTO asserting that Frost was the sole inventor of the CLAIMED INVENTION were maliciously made with ill will, with knowledge of its falsity, or with reckless disregard of whether it was true or false.

144.   Prior to the issuance of the '349 patent, Jardin repeatedly informed DATAllegro of his claims of inventorship of the CLAIMED INVENTION, but DATAllegro subsequently communicated to the USPTO in writing and maliciously stated that Frost was the sole inventor of the CLAIMED INVENTION in disregard of Jardin's repeated claims to the contrary and in reckless disregard of whether DATAllegro's statement to the USPTO was true or false.

145.   Prior to the issuance of the '349 patent, Frost and DATAllegro were aware of Jardin's claims of inventorship of the CLAIMED INVENTION.

146.   Defendants were aware of Jardin's claims of inventorship of the CLAIMED INVENTION as shown, for example, in a complaint dated August 12, 2008, wherein Jardin asserted to Frost and DATAllegro that "Frost attempted to convert Jardin's invention to his own by filing with the USPTO patent applications in the distributed database architecture field."

147.   Defendants were aware of Jardin's claims of inventorship of the CLAIMED INVENTION as shown, for example, in an amended complaint dated August 22, 2008, wherein Jardin asserted to Frost and DATAllegro that "Frost attempted to convert Jardin's invention to his own by filing with the USPTO patent applications in the distributed database architecture field."

148.   Defendants were aware of Jardin's claims of inventorship of the CLAIMED INVENTION as shown, for example, in interrogatory responses to DATAllegro dated March 18, 2010 (later filed publicly as Docket Number 179-4 in the matter of *Jardin v. DATAllegro, Inc.*, No.

3:08-cv-01462 (S.D. Cal.)), wherein Jardin asserted that the '510 application was derived from Jardin.

149.    Defendants were aware of Jardin's claims of inventorship of the CLAIMED INVENTION as shown, for example, in interrogatory responses to Frost dated May 28, 2010 (later filed publicly as Docket Number 179-5 in the matter of *Jardin v. DATAllegro, Inc.*, No. 3:08-cv-01462 (S.D. Cal.)), wherein Jardin asserted that he disclosed to Frost the inventions described in the '510 application and that Frost attempted to pass those inventions off as his own, making false statements to the USPTO in the process.

150.    Despite being aware of Jardin's claims of inventorship of the CLAIMED INVENTION, neither Frost nor DATAllegro informed the USPTO of Jardin's claim of inventorship of the CLAIMED INVENTION prior to the issuance of the '349 patent.

151.    Jardin's claims of inventorship of the CLAIMED INVENTION are contradictory to statements made to the USPTO by Frost and DATAllegro.

152.    Upon information and belief, Frost and DATAllegro purposefully and knowingly did not disclose to the USPTO Jardin's claims of inventorship of the CLAIMED INVENTION so as to prevent the USPTO from having the opportunity to make a determination as to inventorship.

153.    Frost's and DATAllegro's statements to the USPTO were intended to disparage the title of the CLAIMED INVENTION by falsely asserting that Frost was the sole inventor of the CLAIMED INVENTION and denying Jardin of his rightful title to the CLAIMED INVENTION.

154.    Frost either knew that his statement to the USPTO claiming to be the sole inventor of the CLAIMED INVENTION was false or else he lacked reasonable grounds to believe the statement was true and therefore acted with reckless disregard as to whether the statement was true or false.

155.    Frost's statement to the USPTO claiming to be the sole inventor of the CLAIMED INVENTION was made with express or implied malice.

156.    Because Frost's statement to the USPTO claiming to be the sole inventor of the CLAIMED INVENTION was made with malice, it was not privileged.

157.    DATAllegro either knew that its statement to the USPTO claiming that Frost was the sole inventor of the CLAIMED INVENTION was false or else it lacked reasonable grounds to

1  believe the statement was true and therefore acted with reckless disregard as to whether the
2  statement was true or false.

3       158.    DATAllegro's statement to the USPTO claiming that Frost was the sole inventor of
4  the CLAIMED INVENTION was made with express or implied malice.

5       159.    Because DATAllegro's statement to the USPTO claiming that Frost was the sole
6  inventor of the CLAIMED INVENTION was made with malice, it was not privileged.

7       160.    In reliance on the communications by Frost and/or DATAllegro regarding the
8  inventorship of the CLAIMED INVENTION, the USPTO issued the '349 patent naming Frost as the
9  sole inventor of the CLAIMED INVENTION.

10      161.    The '349 patent identifies Frost as the sole inventor of the CLAIMED INVENTION.

11      162.    The communications by Frost and/or DATAllegro to the USPTO regarding the
12  inventorship of the CLAIMED INVENTION cast doubt as to Jardin's inventorship of the
13  CLAIMED INVENTION.

14      163.    In order to clear the cloud over the title of the CLAIMED INVENTION resulting
15  from Defendants' false inventorship statements to the USPTO, Jardin has incurred attorneys' costs
16  and fees associated with this instant action.

17      164.    This present action could have been avoided if either Frost or DATAllegro had
18  disclosed to the USPTO the fact that Jardin claimed inventorship of the CLAIMED INVENTION
19  prior to the issuance of the '349 patent.

20      165.    Frost and/or DATAllegro slandered Jardin's title to the CLAIMED INVENTION, and
21  the claim of inventorship/discovery of the same.

22      166.    Jardin has suffered a reputational injury in the omission of his name as an inventor of
23  the CLAIMED INVENTION.

24      167.    Jardin has suffered other pecuniary losses as a result of the omission of his name as
25  an inventor of the CLAIMED INVENTION.

26      168.    Jardin is entitled to a judgment finding that Defendants have slandered the title of the
27  CLAIMED INVENTION, for damages to include punitive and exemplary damages, attorneys' fees
28  and costs to clear the cloud over the title of the CLAIMED INVENTION, diminution of value of the

1   CLAIMED INVENTION, general damages for the time and inconvenience suffered by Jardin in

2   removing the doubt cast upon the CLAIMED INVENTION, as well as a such other relief as the

3   Court may deem necessary to make Jardin whole.  Additionally, in the event the CLAIMED

4   INVENTION is determined to be invalid or unenforceable as a result of Defendants' slanderous

5   statements and activities before the USPTO, Jardin is entitled to damages including the impairment

6   of vendibility and additional diminution of value of the CLAIMED INVENTION, as well as such

7   other relief as the Court may deem necessary to make Jardin whole.

8                                        **PRAYER FOR RELIEF**

9        WHEREFORE, plaintiff prays for the following relief against Defendants:

10            (a)    A judgment that Jardin is an inventor or co-inventor of the '349 patent and an

11   order under 35 U.S.C. §256 ordering correction of the '349 patent to add Jardin as an inventor;

12            (b)    An order directing Defendants to take appropriate action to change the

13   inventorship designation and add Jardin as an inventor on the PCT application and any applications

14   and patents issuing therefrom;

15            (c)    A judgment finding that Jardin has full ownership interest in the '349 patent

16   and an order assigning the patent to Jardin;

17            (d)    A judgment that Defendants held Jardin's property in a constructive trust;

18            (e)    A judgment that Jardin has an undivided ownership interest in the '349 patent

19   and any other patents or patent applications claiming priority to the '428 provisional application;

20            (f)    A judgment that Defendants have been unjustly enriched at Jardin's expense

21   and an award to Jardin of an amount equal to the Defendants' unjust enrichment;

22            (g)    A judgment that Defendants slandered the title of the CLAIMED

23   INVENTION by failing to identify the true and correct inventors of the CLAIMED INVENTION

24   and an award to Jardin of damages to include the diminution of value and impairment of vendability

25   of the CLAIMED INVENTION;

26            (h)    An award to Jardin of damages to include attorneys' fees and costs to recover

27   title to the CLAIMED INVENTION, as well as the diminution of value of the CLAIMED

28   INVENTION;

1        (i)      An award to Jardin of punitive and exemplary damages;

2        (j)      A judgment and order requiring Defendants, jointly and severally, to pay

3 Jardin's pre-judgment and post-judgment interest on the full amounts of the damages awarded;

4        (k)     A judgment requiring Defendants, jointly and severally, to pay the costs of

5 this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. §285, with

6 prejudgment interest; and

7        (l)      Such other and further relief as this Court may deem just and equitable.

8 **DEMAND FOR JURY TRIAL**

9     Plaintiff hereby demands that all issues so triable be determined by a jury.

10 DATED: May 18, 2011          ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
11                                    DARREN J. ROBBINS
                                    REGIS C. WORLEY, JR.
12                                    CODY R. LeJEUNE

13

14                                        s/ Regis C. Worley, Jr.
                                      REGIS C. WORLEY, JR.

15

16                                    655 West Broadway, Suite 1900
                                    San Diego, CA  92101
17                                    Telephone:  619/231-1058
                                    619/231-7423 (fax)

18                                    ROBBINS GELLER RUDMAN
                                          & DOWD LLP
19                                    JOHN C. HERMAN
                                    RYAN K. WALSH
20                                    3424 Peachtree Road, N.E., Suite 1650
                                    Atlanta, GA  30326
21                                    Telephone:  404/504-6500
                                    404/504-6501 (fax)
22

                                  Attorneys for Plaintiff
23

24

25

26

27

28

**VERIFICATION**

I, Cary A. Jardin, hereby verify that I am familiar with the allegations in the First Amended Complaint for Correction of Inventorship Under 35 U.S.C. §256 and Related Actions, and that I have authorized the filing of the First Amended Complaint for Correction of Inventorship Under 35 U.S.C. §256 and Related Actions, and that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: May 5, 2011                     _____

                                                         Cary A. Jardin

<u>CERTIFICATE OF SERVICE</u>

1

2          I hereby certify that on May 18, 2011, I authorized the electronic filing of the foregoing with

3  the Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4  e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5  caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6  CM/ECF participants indicated on the attached Manual Notice List.

7          I certify under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.  Executed on May 18, 2011.

9
                                         s/ Regis C. Worley, Jr.
10                                        REGIS C. WORLEY, JR.

11                                        ROBBINS GELLER RUDMAN
                                            & DOWD LLP
12                                        655 West Broadway, Suite 1900
                                         San Diego, CA  92101-3301
13                                        Telephone:  619/231-1058
                                         619/231-7423 (fax)
14
                                         E-mail:  rworley@rgrdlaw.com
15

16

17

18

19

20

21

22

23

24

25

26

27

28

622614_1

## Mailing Information for a Case 3:08-cv-01462-IEG -WVG

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **A Rick Atwood , Jr**
  ricka@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Edward Joseph Benz , III**
  jbenz@csgrr.com

- **Juanita R Brooks**
  brooks@fr.com,lrperez@fr.com

- **Enrique D. Duarte**
  duarte@fr.com,pearson@fr.com

- **George L Hampton , IV**
  ghampton@hamptonholley.com,ccarr@hamptonholley.com

- **John C. Herman**
  jherman@rgrdlaw.com,garmstrong@rgrdlaw.com

- **Colin C Holley**
  cholley@hamptonholley.com,jkatz@hamptonholley.com,ghampton@hamptonholley.com,mhoyer@hamptonholley.com

- **Jason S. Jackson**
  jjackson@rgrdlaw.com

- **Cody R. Lejeune**
  clejeune@rgrdlaw.com,e_file_sd@rgrdlaw.com,lmix@rgrdlaw.com

- **Nicholas V. Martini**
  martini@fr.com,lqm@fr.com

- **Robert J. Nolan**
  robert.nolan@pillsburylaw.com,docket@pillsburylaw.com

- **Stacy Quan**
  stacy.quan@microsoft.com

- **Seth M Sproul**
  sproul@fr.com,owens@fr.com

- **Ryan K. Walsh**
  rwalsh@csgrr.com

- **Jason W Wolff**
  wolff@fr.com,lmorton@fr.com

- **Regis C Worley , Jr**
  rworley@rgrdlaw.com,jjackson@rgrdlaw.com,lmix@rgrdlaw.com,jherman@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Randall J Baron
Robbins Geller Rudman & Dowd LLP
655 west Broadway
Suite 1900
San Diego, CA 92101
```