# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARY A. JARDIN,<br><br>            Plaintiff,<br><br>vs.<br><br>DATALLEGRO, INC. and STUART FROST,<br><br>            Defendants. | **CASE NO: 10-CV-2552-IEG (WVG)**<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' JOINT MOTION TO DISMISS CLAIM III;**<br><br>**(2) DENYING AS MOOT DEFENDANT FROST'S SPECIAL MOTION TO STRIKE CLAIM III; and**<br><br>**(3) DENYING DEFENDANT FROST'S MOTION TO DISMISS CLAIMS I AND II**<br><br>[Doc. Nos. 45, 46, 47] |

   Presently before the Court are three motions to dismiss or strike portions of Plaintiff Cary A. Jardin's First Amended Complaint, filed by Defendants Stuart Frost and DATAllegro, Inc.  For the reasons stated below, the Court (1) **GRANTS** Defendants' joint motion to dismiss count III [Doc. No. 45], (2) **DENIES AS MOOT** Defendant Frost's special motion to strike count III pursuant to California's anti-SLAPP statute [Doc. No. 46], and (3) **DENIES** Defendant Frost's motion to dismiss counts I and II [Doc. No. 47].

///

## BACKGROUND

The factual background of this case is discussed in the Court's April 12, 2011 Order and will not be repeated here. Jardin's initial complaint alleged six causes of action. Claims I and II arose under federal patent law, and sought to correct inventorship and ownership of U.S. Patent Number 7,818,349 (the "'349 patent"). Claims III through VI arose under California common law, and stemmed from Defendants' alleged misappropriation of Jardin's intellectual property: conversion, constructive trust, accounting and unjust enrichment, and slander of title. Defendants jointly moved (1) for a more definite statement with regard to Claims I and II, and (2) to dismiss claims III through VI. The Court denied Defendants' motion for a more definite statement but granted their motion to dismiss claims III through VI, concluding Jardin's claims under California law were preempted by the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code § 3426 *et seq*. [Doc. No. 30.]

Shortly after Defendants answered the remaining claims in the initial complaint, Jardin filed a motion for leave to amend, seeking to allege an amended claim for slander of title under California law, ostensibly under a new legal theory. Over Defendants' objections, the Court granted Jardin's request. On May 18, 2011, Jardin filed the FAC, alleging three causes of action: (I) correction of inventorship of the '349 patent, under 35 U.S.C. § 256; (II) a declaration that Jardin is an owner of the '349 patent; and (III) slander of title, under California law. [Doc. No. 40.] Defendants now jointly move to dismiss claim III, or, alternatively, to strike all related references to nonpublic information. [Doc. No. 45] Defendant Frost also moves separately to dismiss claims I and II, and to strike claim III under California Civil Procedure Code § 425.16, California's Anti-SLAPP provision. [Doc. Nos. 46 & 47.]

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted).

The Court must accept all factual allegations pleaded in the complaint as true and construe them and draw all reasonable inferences in favor of the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The complaint, however, must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).

The Court need not accept "legal conclusions" as true. *See Iqbal*, 129 S. Ct. at 1949. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

"[D]ismissal with prejudice is proper" where "the defect appears to not be curable by amendment." *Whitty v. First Nationwide Mortg. Corp.*, No. 05-CV-1021, 2007 WL 628033, at *6 (S.D. Cal. Feb. 26, 2007) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).

**DISCUSSION**

**I.     Defendants' Joint Motion to Dismiss Claim III for Slander of Title**

"California's Uniform Trade Secrets Act 'occupies the field' of common law claims based on the misappropriation of a trade secret." *Mattel, Inc. v. MGA Entertainment, Inc.*, ---F. Supp. 2d---, 2011 WL 1114250, at *44 (C.D. Cal. Jan. 5, 2011) (quoting *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009)). Thus, CUTSA preempts all claims resting on allegations of the misappropriation of confidential information. *Id.*; *see also Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) ("CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'" (quoting Cal. Civ. Code § 3426.7 (a)-(b))), *overruled on other grounds*, *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). "A claim cannot simply depend on a 'different theory of liability' to survive [CUTSA's] supersessive effect." *Mattel*, 2011 WL 1114250, at *44 (citing *K.C. Multimedia*, 171 Cal. App. 4th at 957-59). Rather, to avoid preemption, a claim "must be based on more than 'the same nucleus of facts'" as a claim for misappropriation of trade

secrets.  *Id.* (quoting *K.C. Multimedia*, 171 Cal. App. 4th at 958).  Thus, "'[i]f there is no material distinction between the wrongdoing alleged in a CUTSA claim and that alleged in a different claim, the CUTSA preempts the other claim.'"  *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08cv1992, 2009 WL 3326631, at *11 (S.D. Cal Sept. 3, 2009) (quoting *Convolve, Inc. v. Compaq Computer Corp.*, 2006 WL 839022, at *6 (S.D.N.Y. Mar. 31, 2006) (applying California law)) (internal alterations omitted).  Put another way, to avoid CUTSA preemption, a claim must "retain sufficient independent facts" to be viable after the "'trade secret' facts are removed."  *See Gabriel Techs.*, 2009 WL 3326631, at *12.

   Jardin's initial claim for slander of title alleged that Defendants (a) misappropriated Jardin's confidential information; (b) used that misappropriated information to apply for a patent; and (c) identified Frost as the sole inventor of the invention claimed in the '349 patent—*i.e.*, failed to disclose to the USPTO Jardin's role in developing the patent's underlying technology.  In the initial complaint, Jardin claimed property interests in the allegedly misappropriated intellectual property as well as the '349 patent.  [*See* Doc. No. 1 ¶¶ 177, 180.]  Because the core of Jardin's claim was that Frost misappropriated Jardin's confidential information, the Court dismissed the claim as preempted by CUTSA, but granted Jardin leave to amend if he could "identify a cognizable property interest that lies outside of trade secret law."  [Doc. No. 30, at 6.]

   Repackaging his slander of title claim under a new legal theory, Jardin now alleges the same underlying facts, but claims a property interest in only the '349 patent—the "CLAIMED INVENTION."  [*See* FAC ¶¶ 1-99, 126-30.]  He claims the alleged slander actually occurred when Defendants knowingly misrepresented to the USPTO that Frost, rather than Jardin, was the sole inventor.  [*See* Pl.'s Opp'n, at 10 ("[Claim III] does not address false statements made prior to the filing of the patent applications, but is instead directed to the false statements of sole inventorship made subsequent to the filings.").]  Jardin's legal claim of inventorship, however, still stems from his factual allegation that Frost used confidential information he obtained from Jardin in the application for the '349 patent.  In other words, Jardin still alleges Frost misappropriated confidential information, that the '349 patent incorporates the allegedly misappropriated information, and that, as a result, Jardin should be counted as the sole inventor and owner—or at least a co-inventor and co-owner—of the '349

patent. Although the factual allegations of misappropriation underlie his claim of ownership of the '349 patent, Jardin attempts to avoid CUTSA preemption by focusing his slander of title claim on Defendants' identification of Frost as the sole inventor during the patent application process.

To support his characterization of the slander of title claim, Jardin relies heavily on two cases: *HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1355 (Fed. Cir. 2010), and *Gabriel Technologies Corp. v. Qualcomm Inc.*, No. 08cv1992-MMA (POR), 2009 WL 3326631, at *11 (S.D. Cal. Sept. 3, 2009). In *HIF Bio*, the plaintiffs alleged several claims, including correction of inventorship and ownership of several patents, as well as a claim for slander of title under California law. The district court granted the defendants' motions to dismiss under Rules 12(b)(1) and 12(b)(6), holding that the plaintiffs' claims for "rights of inventorship and ownership of inventions . . . are valid state law claims." The district court also declined to exercise supplemental jurisdiction over those and other state law claims, including the claim for slander of title, and thus remanded the case to state court. *See* 600 F.3d at 1350-51. On appeal, the Federal Circuit held that the district court erred in concluding that the plaintiffs' claim for correction of inventorship presented a valid state law claim, because "the field of federal patent law preempts any state law that purports to define rights based on inventorship." *Id.* at 1352-53 (internal quotation marks omitted). Moreover, "[b]ecause inventorship is a unique question of patent law, the cause of action arises under [28 U.S.C.] § 1338(a)."[1] *Id.* at 1353 (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988)). Addressing the remaining causes of action under state law, the Federal Circuit held that the district court also had jurisdiction over the slander of title claim because it necessarily depended on the resolution of an issue under federal patent law—namely, whether the "defendants' public statements of inventorship are false and caused the plaintiffs' damage." *Id.* at 1354-55.

Jardin reads *HIF Bio* to "expressly permit[]" claims for slander of title and to establish that such claims do not stem from allegations of trade secret misappropriation. [Pl.'s Opp'n, at 4.] But *HIF Bio* does not establish, as a matter of law, that CUTSA cannot preempt a claim for slander of title.

---

[1] The Federal Circuit also held, however, that the plaintiff's claim for correction of inventorship was premature in that case because it involved *pending* patent applications. *HIF Bio*, 600 F.3d at 1353-54.

5

1  Indeed, *HIF Bio* does not discuss CUTSA or what may constitute an allegation of trade secret
2  misappropriation. *HIF Bio* held only that the district court had jurisdiction to hear the plaintiff's claim.
3  Here, however, Defendants have not contested jurisdiction.
4        Jardin also relies on *Gabriel Technologies* to argue that his claim is not preempted because it
5  alleges the slander occurred in Defendants' statements to the USPTO while prosecuting the '349
6  patent. *See* 2009 WL 3326631, at *11 ("Preemption is not triggered where the facts in an independent
7  claim are similar to, but distinct from, those underlying the misappropriation claim."). But *Gabriel*
8  *Technologies* did not involve a slander of title claim; moreover, the court found most of the claims at
9  issue in that case preempted by CUTSA. *See id.* at *11-13 ("The FAC as a whole rests on factual
10 allegations of trade secret misappropriation.").
11       In *Gabriel*, a licensee allegedly misappropriated confidential information related to the licensed
12 technologies and related joint ventures, and used that information to obtain numerous patents. The
13 defendants argued that CUTSA preempted the plaintiffs' state law claims for fraud, tortious
14 interference with contract, conversion, unfair competition, and unjust enrichment. The court largely
15 agreed, holding that CUTSA preempted all but the claim for fraudulent inducement. Rather than
16 alleged misappropriation of trade secrets, the fraudulent inducement claim in *Gabriel* was based on
17 allegations that the defendants "intentionally and knowingly misrepresented their intent to perform in
18 accordance with the 1999 license agreement," and focused on the defendants' "misrepresentations
19 regarding intent to perform in the future according to agreed upon contractual terms." *Id.* at *13. By
20 contrast—and more closely analogous with the claim at issue in this case—the Court held CUTSA
21 preempted the plaintiffs' tortious interference claim, which rested on the allegation that "[a defendant]
22 listed himself as the sole inventor on patents to which [one of the plaintiff's] employees contributed."
23 *Id.* at *12.
24       Although Jardin has limited his claimed property interest to the '349 patent, neither *HIF Bio*
25 nor *Gabriel* saves Jardin's claim from CUTSA preemption. It goes without saying that to state a claim
26 for slander of title, Jardin must allege facts supporting his claim of title in the patent. But Jardin's

6

1  claimed ownership interest in the '349 patent depends entirely on his claim of inventorship, and his
2  claim of inventorship rests entirely on his factual allegations of trade secret misappropriation.[2]

3  Put another way, Jardin's slander of title claim survives only if the Court accepts as true two
4  legal conclusions: Jardin is the sole or a co-inventor of the '349 patent, and, therefore, Jardin has a
5  proprietary interest in the patent. "While legal conclusions can provide the framework of a complaint,
6  they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1949. Here, the only factual
7  allegations supporting Jardin's slander of title claim are that Frost misappropriated technology
8  invented by Jardin.

9  Furthermore, Jardin does not avoid CUTSA preemption merely by pleading in the alternative
10 that he and Frost are co-inventors of the '349 patent. Under this theory, Jardin argues, his claim of co-
11 inventorship cannot depend on allegations of trade secret misappropriation because, as a matter of law,
12 no misappropriation could have occurred. [Pl.'s Opp'n, at 10 ("Prior to the time Frost filed for patent
13 protection he could have done whatever he pleased with the joint invention without misappropriating
14 it.").] Jardin's argument rests on the premise that Frost could not have misappropriated trade secrets in
15 which he held a proprietary interest. This is simply untrue under California law.

16 Before the USPTO published Frost's patent application any proprietary interests in the
17 underlying technology—whether Frost's or Jardin's—were rooted in California trade secrets law, not
18 federal patent law. *See Mattel*, 2011 WL 1114250, at *55 (noting that California law recognizes no
19 property right in confidential information outside of trade secrets law); *BondPro Corp. v. Siemens
20 Power Generation, Inc.*, 463 F.3d 702, 707 (7th Cir. 2006) ("Publication in patent destroys the trade
21 secret . . . because patents are intended to be widely disclosed—that is the quid for the quo of the
22 patentee's exclusive right to make and sell the patented device."); *Ultimate Timing, LLC v. Simms*, 715
23 F. Supp. 2d 1195, 1207 (W.D. Wash. 2010) ("'Matter which prior to a patent grant might have been

---

[2] Moreover, to state a claim for slander of title, Jardin must establish that a slander actually occurred—*i.e.*, that Defendants' statements to the USPTO that Frost was the sole inventor were false. *See HIF Bio*, 600 F.3d at 1355 (falsity is an element of a slander of title claim) (citing *Smith v. Commonwealth Land Title Ins. Co.*, 177 Cal. App. 3d 625, 630 (1986)). Here again, Jardin's claim depends on his claim of inventorship, which depends on his allegations of trade secret misappropriation.

7

1  subject to protection as a trade secret is deemed disclosed to the extent that it is described in the
2  patent.'" (quoting 1 Roger M. Milgrim & Eric E. Bensen, *Milgrim on Trade Secrets* § 1.06[1])).
3  Under California law, one joint-owner's use of a trade secret in a manner affecting another joint-
4  owner's rights in that trade secret can constitute misappropriation. *Morton v. Rank Am., Inc.*, 812 F.
5  Supp. 1062, 1074-75 (C.D. Cal. 1993) (citing Cal. Civ. Code § 3426.1(b)).[3]

6  As he states on page one of his opposition brief, "Jardin's allegations in this case are clear:
7  *Frost took information from Jardin, and Frost used that information to file his patent application*."
8  [Pl.'s Opp'n, at 1 (emphasis added).]  Without the allegations that Frost misappropriated Jardin's
9  confidential information, there is no factual basis for a slander of title claim in this case.  Thus, Jardin's
10 claim remains preempted by CUTSA.  Accordingly, the claim for slander of title is **DISMISSED**
11 **WITH PREJUDICE**.[4]

12 **II.     Frost's Special Motion to Strike the Slander of Title Claim Under California Civil**
13 **        Procedure Code § 425.16**

14 The Court also **DENIES** each parties' requests for attorney's fees related to this motion.
15 Because the Court has dismissed the slander of title claim as to all Defendants, Frost's special motion
16 to strike is **DENIED AS MOOT**.

17 **III.    Frost's Motion to Dismiss Claims I (Correction of Inventorship) and II (Correction of**
18 **        Ownership)**

19   **A. Whether Frost's Motion is Timely**

20 As an initial matter, Jardin argues Frost's motion should be denied as untimely.  Frost answered
21 Jardin's initial complaint, which included factual allegations and claims for correction of inventorship
22 and ownership identical to those in the FAC.  A Rule 12(b)(6) motion must be made before filing an

---

[3] California Civil Code § 3426.1(b) defines "misappropriation," and provides, in relevant part:
> "Misappropriation" means . . . use of a trade secret of another without express or implied consent by a person who . . . [a]t the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . .

Cal. Civ. Code § 3426.1(b)(2)(B)(ii).

[4] Because the Court dismisses the claim as preempted by CUTSA, it need not address Defendants' other challenges to Jardin's slander of title claim.

8

1  answer.  *See Aetna Life Ins. Co. v. Alla Med. Servs. Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988).  Frost
2  answered the initial complaint, but now moves to dismiss the same correction of inventorship and
3  ownership claims from the FAC.
4      "[W]hen a plaintiff files an amended complaint, '[t]he amended complaint supersedes the
5  original, the latter being treated thereafter as non-existent.'"  *Rhodes v. Robinson*, 621 F.3d 1002, 1005
6  (9th Cir. 2010) (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)).  Thus, the pleadings related to
7  the original complaint no longer have any legal effect, and Frost's current motion is timely.  *See, e.g.*,
8  *Stamas v. Cnty. of Madera*, CV F 09-0753 LJO SMS, 2010 WL 289310, at *4  (E.D. Cal. Jan. 15,
9  2010) (citing *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466 (2000)) (holding that defendants who had
10 filed an answer in response to the original complaint had the right to file a motion to dismiss in
11 response to an amended complaint).  Accordingly, the Court will address the substance of Frost's
12 motion below.

**B. Claim I: Correction of Patent Inventorship**

14     "[I]nventorship and ownership are separate issues."  *Beech Aircraft Corp. v. Edo Corp.*, 990
15 F.2d 1237, 1248 (Fed. Cir. 1993).  "[I]nventorship is a question of who actually invented the subject
16 matter claimed in a patent."  *Id.*  "Ownership, however, is a question of who owns legal title to the
17 subject matter claimed in a patent, patents having the attributes of personal property."  *Id.* (citing 35
18 U.S.C. § 261).  While an inventor may assign his rights in a patent, "who ultimately possesses
19 ownership rights in that subject matter has no bearing whatsoever on the question of who actually
20 invented that subject matter."  *Id.*
21     "A person who alleges that he is [the sole or] a co-inventor of the invention claimed in an
22 issued patent who was not listed as an inventor on the patent may bring a cause of action to correct
23 inventorship in a district court under 35 U.S.C. § 256."  *Eli Lilly and Co. v Aradigm Corp.*, 376 F.3d
24 1352, 1357 n.1 (Fed. Cir. 2004) (citing *See MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568,
25 1570 (Fed. Cir.1989)).  Section 256 permits correction of inventorship "[w]henever . . . through error
26 an inventor is not named in an issued patent and such error arose without any deceptive intention on
27 his part."  *See* 35 U.S.C. § 256; *MCV Inc.*, 870 F.2d at 1571.  "The court before which such matter is

1  called in question may order correction of the patent on notice and hearing of all parties concerned and
2  the [USPTO] Commissioner shall issue a certificate accordingly." 35 U.S.C. § 256.

3  "[A] suit in district court for determination of co-inventorship and correction of a patent under
4  35 U.S.C. § 256 has 'only one prerequisite to judicial action: all parties must be given notice and an
5  opportunity to be heard. If that is done, there is subject-matter jurisdiction in the district court over a
6  dispute raising solely a joint inventorship issue among contending co-inventors.'" *Gabriel*, 2009 WL
7  3326631, at *10 (quoting *MCV Inc.*, 870 F.2d at 1570). "Section 256 and subsequent case law clearly
8  require that all 'concerned' parties must be given notice and an opportunity to be heard." *Id.*

9  Frost remains listed as the sole owner of the '349 patent. Frost argues, however, that because
10 he assigned his proprietary and economic interests in the '349 patent to DATAllegro, he cannot be
11 financially liable to Jardin even if the Court were to find Jardin was a co-inventor of the patent.
12 Therefore, Frost argues, he is not a "concerned party" under 35 U.S.C. § 256, and thus not a proper
13 party to this action.

14 An action under § 256 is distinct from, but akin to, an action for declaratory judgment. *See*
15 *MCV, Inc.* 870 F.2d at 1571 (while an action under § 256 is not an action for declaratory judgment, a
16 party seeks "a judicial determination of co-inventorship, a 'declaration,' as it were," under § 256);
17 *Gabriel Techs.*, 2009 WL 3326631, at 9 (describing plaintiff's claim under § 256 as seeking
18 declaratory judgment). Although other claims might follow from a change in inventorship, the sole
19 relief under § 256 is to change the patent to reflect the true inventors. *See* 35 U.S.C. § 256. "The
20 validity of a patent requires that the inventors be correctly named." *Chou v. Univ. of Chi. & Arch Dev.*
21 *Corp.*, 254 F.3d 1347, 1359 (Fed. Cir. 2001). Both inventors and the public have an interest in
22 "assuring correct inventorship designations on patents," and that interest is "served by a broad
23 interpretation of the statute." *Id.*

24 Here, Frost is listed on the patent as the sole inventor, and Jardin raises an adverse claim of
25 inventorship. Frost argues that, to be a "concerned party" under § 256, he must retain some economic
26 interest in the patent. For this argument, he relies on *Gabriel Technologies*, 2009 WL 3326631, and *E-*
27 *Z Bowz, LLC v. Prof'l Prod. Research Co.*, No. 00 Civ. 860 (LTS) (GWG), 2003 WL 22064257, *4-5
28 (S.D.N.Y. Sept. 5, 2003). Neither case supports Frost's proposition.

In *Gabriel*, the issue was not whether a defendant should be dismissed for lack of interest in the case, but whether the plaintiff had provided sufficient notice to all concerned parties. *See* 2009 WL 3326631, at *9-10 ("Defendants argue that the named inventors on the patents, who stand to lose their patent rights depending on the outcome of this lawsuit, are entitled to notice of such information before the Court can exercise jurisdiction to correct inventorship."). Discussing the *notice* requirement, the court noted that "[p]arties with an economic stake in a patent's validity are entitled to be heard on inventorship issues once a putative inventor has sued to correct inventorship." *Id.* at 9. In context, it is clear that statement was meant to establish that a party's economic interest in a patent was sufficient to invoke § 256's notice requirement; it does not stand for the proposition that an economic interest is a necessary condition for a party to be named as a defendant. *See also Chou*, 254 F.3d at 1359 (concluding that "parties with an economic stake in a patent's validity may be subject to a § 256 suit," but not establishing such a stake as a requirement).

Inventorship was not at issue in *E-Z Bowz*. In that case, one of two co-inventors assigned "all of [her] right, title, and interest" in the patent in question to E-Z Bowz. E-Z Bowz filed suit against the defendant, Professional Product Research Co. ("PPR"), alleging patent infringement, among other claims. 2003 WL 22064257, at *1-2. Then, the second of the co-inventors also assigned her rights in the patent to E-Z Bowz. PPR moved to dismiss for failure to join an indispensable party—the co-inventor who assigned her rights to the patent to E-Z Bowz *after* E-Z Bowz had initiated the lawsuit. *Id.* The court denied the motion, holding that, in the context of an *infringement action*, an inventor with no remaining ownership or other economic interests in the patent-in-suit was not an indispensable party. *Id.* at *3-5 ("[A] party which assigns all of its rights and interests under a patent should not be compelled to litigate an infringement action merely because it was the patent owner on the day suit was filed and for a few days thereafter. A party which divests itself of all of its interest in a patent does not have a sufficient stake in the outcome of the controversy to require that it remain a party." (quoting *Procter & Gamble Co. v. Kimberly-Clark Corp.*, 684 F. Supp. 1403, 1407 (N.D. Tex. 1987) (internal quotation marks and alteration omitted). *E-Z Bowz* said nothing about a named inventor's interest in a suit to correct inventorship under § 256.

Frost has provided no authority suggesting that, to be named as a defendant in an action under § 256, a listed inventor must face any liability beyond the potential diminution of his attribution of inventorship. Moreover, adopting the heightened standard for establishing a patent's named inventor as a "concerned party" that Frost proposes contravenes the purpose of § 256's "on notice and hearing of all parties concerned" requirement.

The attribution of inventorship confers value other than purely economic benefits. *See Chou*, 254 F.3d at 1359 (recognizing the reputational interest in attribution of inventorship, but not deciding whether it alone was sufficient to establish standing after finding the plaintiff also had economic interests at stake); *Shukh v. Seagate Tech,* LLC, No. 10-404 (JRT/JJK), 2011 WL 1258510, at *7-8 (D. Minn. Mar. 30, 2011) (holding reputational concerns alone were sufficient to establish standing to initiate an action under § 256). The notice requirement of § 256 ensures that a patent's listed inventor has the opportunity to defend against any challenge to his claim of inventorship. *See MCV, Inc.*, 870 F.2d at 1570 (under § 256, notice is the sole prerequisite to a district court's hearing "a dispute raising solely a joint inventorship issue among contending co-inventors"). Limiting the definition of "all parties concerned" as Frost suggests would allow a plaintiff to seek a change of a patent's listed inventorship without notifying a listed inventor who had assigned his economic interests in the patent, thus hindering a listed inventor's ability to defend his claim of inventorship. If Frost does not wish to participate in these proceedings to defend against Jardin's challenge to his claimed inventorship of the '349 patent, he is free to concede the issue.

Frost's assignment of his ownership rights in the '349 patent does not affect his interest in remaining the patent's sole listed inventor. Thus, Frost is a proper party to Jardin's claim for correction of inventorship. Accordingly, Frost's motion to dismiss the correction of inventorship claim is **DENIED**.

C. **Claim II: Correction of Patent Ownership**

Patents are treated as personal property, and all interests in a patent are assignable. 35 U.S.C. § 261. "[A] patentee or his assignee may grant and convey to another: (1) the whole patent, (2) an undivided part or share of that exclusive right, or (3) the exclusive right under the patent within and

throughout a specified part of the United States." *Isr. Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007) (citations omitted).

"[A]n invention presumptively belongs to its creator." *Id.* (quoting *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 406 (Fed. Cir. 1996) (internal quotation marks omitted). "Consistent with the presumption that the inventor owns his invention, the '[p]atent issuance creates a presumption that the named inventors are the true and only inventors.'" *Id.* (quoting *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998)). Thus, "[a]t the heart of any ownership analysis lies the question of who first invented the subject matter at issue, because the patent right initially vests in the inventor who may then, barring any restrictions to the contrary, transfer that right to another, and so forth." *Beech Aircraft*, 900 F.2d at 1248.

Where a patent lists multiple inventors, each inventor is a co-owner, and "each co-owner 'presumptively owns a pro rata undivided interest in the entire patent, no matter what their respective contributions.'" *Isr. Bio-Eng'g Project*, 475 F.3d at 1263 (quoting *Ethicon*, 135 F.3d at 1460). "[A] joint inventor as to even one claim enjoys a presumption of ownership in the entire patent." *Id.*

Although clearly related, "issues of patent ownership are distinct from questions of inventorship." *Id.* (citing *Beech Aircraft*, 990 F.2d at 1248). "This interplay between inventorship and ownership creates the anomalous situation that a co-inventor of even a single claim can then assert a right of joint ownership over an entire patent with multiple claims." *Id.* (citations omitted); *see Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed Cir. 1997) (citations omitted) ("One need not alone conceive of the entire invention, for this would obviate the concept of joint inventorship."); *see also Ethicon*, 135 F.3d at 1460 ("This rule presents the prospect that a co-inventor of only one claim might gain entitlement to ownership of a patent with dozens of claims."). Thus, co-inventors—*i.e.*, presumptive co-owners—"may transfer and convey their rights and any license to their rights to a patent without obtaining the consent of the remaining inventors." *Silica Tech, L.L.C. v. J-Fiber, GmbH*, Civ. No. 06-10293- WGY, 2009 WL 2579432, at *39 (D. Mass. May 19, 2009) (citing *Ethicon*, 135 F.3d at 1460).

Frost argues that, if Jardin establishes himself as a co-inventor—and thus, presumptively, a co-owner—of the '349 patent, Frost cannot be liable under the claim for co-ownership because, as a co-

inventor, Frost was entitled to convey rights in the entire '349 patent without Jardin's consent. *E.g.*, *Isr. Bio-Eng'g Project*, 475 F.3d at 1263 (citations omitted); *Silica Tech*, 2009 WL 2579432, at *39 (citing *Ethicon*, 135 F.3d at 1460). Frost's argument, however, ignores the possibility that Jardin may establish himself as the *sole* inventor—and thus the presumptive sole owner—of the '349 patent, in which case Frost would have had no right to transfer any rights in the patent. Furthermore, the FAC requests relief related to the profits Frost reaped when he sold DATAllegro—which held all rights to the '349 patent—to Microsoft. [*See* FAC, at 16-17 (prayer for relief, seeking a constructive trust and remedies for, among other things, unjust enrichment).] Frost has provided no authority suggesting he cannot be liable for such retrospective relief. Thus, Frost's motion to dismiss Jardin's claim for correction of ownership is **DENIED**.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendants' joint motion to dismiss Plaintiff's slander of title claim is **GRANTED**. [Doc. No. 45.] The claim for slander of title is **DISMISSED WITH PREJUDICE**.

2. Defendant Frost's special motion to strike the slander of title claim is **DENIED AS MOOT**. [Doc. No. 46.] Plaintiff's and Defendant Frost's respective requests for attorney's fees and costs related to this motion are **DENIED**.

3. Defendant Frost's motion to dismiss Plaintiff's claims I and II of the FAC, for correction of inventorship and ownership, respectively, is **DENIED**. [Doc. No. 47.]

**IT IS SO ORDERED.**

**DATED:** 7/29/11

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**