UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARY A. JARDIN,<br><br>            Plaintiff,<br><br>vs.<br><br>DATALLEGRO, INC. and STUART FROST,<br><br>            Defendants. | CASE NO: 10-CV-2552-IEG (WVG)<br><br>**ORDER OVERRULING PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE GALLO'S JUNE 27, 2011 MINUTE ORDER**<br><br>[Doc. No. 58] |

Presently before the court is Plaintiff Cary A. Jardin's objection to Magistrate Judge Gallo's June 27, 2011 minute order. [Doc. No. 58.] For the reasons stated below, the Court **OVERRULES** Jardin's objections, and thus upholds Judge Gallo's order.

**BACKGROUND**

The factual background of this case is discussed in the Court's April 12, 2011 Order and will not be repeated in detail here. To briefly summarize, the central legal issue in this action is the determination of the proper inventorship of U.S. Patent Number 7,818,349 (the "'349 patent"). Jardin asserts Defendant Frost improperly listed himself as the sole inventor of the '349 patent, omitting to list Jardin as either the proper sole inventor or a co-inventor. The factual allegations supporting Jardin's legal claims, however, implicate concerns related to trade secret law. [*See* Pl.'s Opp'n to Defs.' Mot. to Dism. Claim III of the FAC, Doc. No. 51, at 1 ("Jardin's allegations in this case are

1

clear: Frost took information from Jardin, and Frost used that information to file his patent application.").]

This is the second case Jardin has filed against Defendants DATAllegro, Inc. and Stuart Frost. Jardin filed a related suit in 2008, alleging that Defendant DATAllegro manufactured products that infringed upon U.S. Patent Number 7,177,874 (the "'874 patent"), issued to Jardin. *See Jardin v. DATAllegro, Inc.*, No. 08-CV-1462 IEG (WVG) (S.D. Cal. 2008) (the "2008 case").[1]  Attorneys from the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") have represented Jardin in both the 2008 case and this action.

During the course of discovery in the 2008 case, Jardin's counsel gained access to confidential information regarding DATAllegro's accused products. While those products are not directly at issue in this action, the factual allegations of the 2008 and 2010 cases substantially overlap and the confidential information produced in the 2008 case is relevant to the 2010 case. [*Compare* 2008 Case Compl., ¶¶ 9-21 Doc. No. 1 (alleging that Frost (1) "had a relationship with XPrime" (Jardin's company); (2) had access to confidential information related to Jardin's inventions, which were later claimed in the '874 patent; (3) left Jardin's company; (4) incorporated Jardin's confidential information into DATAllegro's technology; and (5) thus infringed on the '874 patent subsequently issued to Jardin), *with* 2010 Case FAC, ¶¶ 8-94 (alleging that Frost (1) was in some type of relationship with XPrime"; (2) had access to confidential information related to Jardin's inventions, which were later claimed in the '874 patent; (3) left Jardin's company; (4) incorporated Jardin's confidential information into the application that eventually resulted in the '349 patent; and (5) failed to list Jardin as an inventor of the '349 patent).]

A protective order on file in the 2008 case limits the use of produced protected information to that case. [*See* 2008 Case, Doc. No. 78 ¶ 6 [hereinafter the "2008 protective order"].]  Because of the factual overlap in the 2008 and 2010 cases, the parties discussed revising the 2008 protective order to allow them to use in the 2010 case information produced in the 2008 case, with certain exceptions. Specifically, Defendants expressed concern that Jardin's attorneys and expert witnesses who had actual

---

[1] References to the "2010 case" refer to this action, 10-CV-2552.

1  access to Defendants' confidential product-information in the 2008 case "are unlikely to divorce
2  themselves from that knowledge," and, therefore, that knowledge might inform Jardin's claims and
3  discovery requests related to his allegations of misappropriation of his confidential information in the
4  2010 case.  Defendants thus sought to temporarily wall off the legal team that represented Jardin in the
5  2008 case, "only until Plaintiff sufficiently identifies . . . what confidential information of his was
6  allegedly taken." [*See* Defs.' Resp. to Pl.'s Objection, Doc. No. 62, at 2.]  Jardin rejected that
7  proposal, and when the parties could not reach an agreement on the issue, he brought the issue before
8  Judge Gallo.  Jardin also refused to participate in a Rule 26(f) conference until the issue is resolved.
9  [*See* Pl.'s Objection, Doc. No. 58, at 3; Worley Decl., Exs. B & C (the parties' letter briefs to Judge
10 Gallo).]

11       On June 27, 2011, Judge Gallo held a telephonic discovery conference on the record.  [*See*
12 Transcript of June 27, 2011 Telephonic Discovery Hearing, Doc. No. 54 [hereinafter "June 27 Hr'g
13 Tr."].]  Finding Defendants' concern over Plaintiff's access to confidential material in the 2008 case
14 was legitimate, Judge Gallo ordered Jardin to identify the specific information he alleges Defendants
15 misappropriated in response to a special interrogatory from Defendants.  Judge Gallo also ordered
16 Jardin to preclude members of his 2008 legal team from participating in drafting Jardin's response to
17 the special interrogatory.  [*See* June 27, 2011 Minute Order, Doc. No. 50; June 27 Hr'g Tr., 37:24-
18 40:16, 43:19-23.]  As in Defendants' initial proposal, Judge Gallo only ordered this "ethical wall" to
19 keep the specific lawyers who had actual access to Defendants' confidential information in the 2008
20 case from participating.  He did not preclude other attorneys at Robbins Geller from participating in
21 the response; nor did he disqualify Robbins Geller from continuing to represent Jardin in this case.
22 Judge Gallo directed the parties to revise the 2008 protective order accordingly.  [*See* Minute Order;
23 June 27 Hr'g Tr., at 38:4-39:18, 40:13-43:23.]  On July 11, 2011, Jardin filed this objection to Judge
24 Gallo's order.

## LEGAL STANDARD

26       A party may object to a U.S. Magistrate Judge's non-dispositive pretrial order within fourteen
27 days of service of that order.  Fed. R. Civ. P. 72(a).  The Court must uphold the magistrate judge's
28 order unless it is "clearly erroneous or contrary to law."  *Id.*; 28 U.S.C. § 636(b)(1)(A).  "The 'clearly

erroneous' standard applies to the magistrate judge's factual determinations and discretionary decisions . . . ." *Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999) (citations omitted). "Under this standard, 'the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made.'" *Id.* (quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 943 (7th Cir. 1997).

The "contrary to law" standard, however, "allows independent, plenary review of purely legal determinations by the Magistrate Judge." *Jadwin v. Cnty. of Kern*, 767 F. Supp. 2d 1069, 1010 (E.D. Cal. 2011) (citing *FDIC v. Fidelity & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal. 2000)); *see also Computer Econ.*, 50 F. Supp. 2d at 983 n.4 ("It is not entirely clear whether the 'contrary to law' standard contemplates de novo review of a magistrate judge's legal determinations[,] . . . [but, at] a minimum, it is less deferential than the 'clearly erroneous' standard applicable to the magistrate judge's factual determinations and acts of discretion."). A magistrate judge's order "is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Jadwin*, 767 F. Supp. 2d at 1010-11 (quoting *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006) (internal quotation marks omitted).

**DISCUSSION**

**I.     Whether "Clearly Erroneous" or "Contrary to Law" is the Appropriate Standard of Review**

The parties dispute the nature of Judge Gallo's order, and thus disagree over which standard of review is appropriate. This dispute stems from discussions during the June 27, 2011 hearing and in the parties' letter-briefs to Judge Gallo regarding the possible application of California Code of Civil Procedure § 2019.210 to this case.

Jardin argues that, whether Judge Gallo expressly applied § 2019.210 or merely fashioned a procedure under the Federal Rules to achieve the same ends, he improperly applied California Civil Procedure Code § 2019.210. Thus, Jardin argues, the order was based on a conclusion of law—namely, that § 2019.210 applies in federal court—and should be subject to the "contrary to law" standard on review.

Defendants argue that Judge Gallo's order was tantamount to a protective order under Federal Rule 26(c) and was firmly rooted in his discretion under the Federal Rules to manage discovery and his consideration of the particular facts of this case. Thus, Defendants argue, Judge Gallo's order is a factual determination, subject to the "clearly erroneous" standard.

Section 2019.210 (formerly § 2019(d)) was enacted as part of the California Uniform Trade Secrets Act ("CUTSA"). *See Computer Econ.*, 50 F. Supp. 2d at 983-84. Section 2019.210 prevents a plaintiff alleging misappropriation of trade secrets from taking discovery until it provides a statement identifying the allegedly misappropriated trade secrets "with reasonable particularity." Section 2019.210's mandatory pre-discovery trade secret statement serves four purposes:

> First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. . . . Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. . . . Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.

*Computer Econ.*, 50 F. Supp. 2d at 985 (internal citations omitted). In short, § 2019.210 aims to frame the dispute at an early stage of litigation and to prevent abuse of discovery in trade secret cases.

The Ninth Circuit has not decided whether § 2019.210 applies in federal court, and district courts in California have reached conflicting conclusions. *Compare Computer Econ.*, 50 F. Supp. 2d at 992 (concluding, after an extensive *Erie* analysis, that § 2019.210 (then § 2019(d)) applies in federal court); *Neothermis Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1043-45 (C.D. Cal. 2004) (applying § 2019.210 (then § 2019(d)) in a federal action for breach of a nondisclosure agreement, which included factual allegations of trade secret misappropriation), *with Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, No. S-06-0533 GEB GGH, 2007 WL 273949, at *2-3 (E.D. Cal. Jan. 29, 2007) (concluding that § 2019.210 is a rule of procedure that conflicts with the Federal Rules, and thus it does not apply in federal court); *Hilderman v. Enea Teksci, Inc.*, No. 05cv1049 BTM (AJB), 2010 WL 143440, at *2-3 (S.D. Cal. Jan. 8, 2010) (holding, on a motion in limine, that § 2019.210 does not apply in federal court, but noting that the plaintiff may be barred from presenting at trial trade secret claims of which the defendants have not received "fair notice"). But the cases rejecting the direct application of § 2019.210 in federal court do not suggest that a federal magistrate judge cannot

5

consider issues related to the policy rationale for § 2019.210; nor do they suggest that a judge employing discovery procedures similar to those mandated by § 2019.210 necessarily applies state law.

Indeed, in *Hilderman*, on which Jardin heavily relies, the plaintiff[2] filed a trade secret statement before initiating discovery as § 2019.210 would require in state court.  Hearing motions in limine after discovery had concluded, the court held that, although § 2019.210 did not apply to federal actions, the plaintiff did not have "free reign to try trade secret claims that were not disclosed in its 'Trade Secret Disclosure.'"  2010 WL 143440, at *3.  Thus, although the court found § 2019.210 inapplicable, it held that the plaintiff may be barred from presenting trade secret claims of which the opposing party had not received fair notice, "whether in the 'Trade Secret Disclosure' or other discovery responses."  *Id.*; *see also Applied Materials, Inc. v. Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd.*, No. C 07-5248 JW (PVT), 2008 WL 183520, at *1 & n.2 (N.D. Cal. Jan. 18, 2008) (expressly declining to take a position on the applicability of § 2019.210 in federal court, but using Federal Rule 26(c) "and the inherent discretion of a court to manage its own discovery" to order the plaintiff to disclose all trade secrets it alleged the defendants misappropriated).

Portions of the procedure Judge Gallo ordered mirror what § 2019.210 would mandate in state court.  Specifically, Judge Gallo ordered Defendants to "propound to Plaintiff one (1) special interrogatory" that essentially asks Jardin to identify the confidential information he alleges Defendant Frost misappropriated and incorporated into the '349 patent.  [*See* Minute Order, Doc. No. 50.]  Jardin's response to this interrogatory will serve the same purpose as the trade secret statement mandated by § 2019.210.  [*See* June 27 Hr'g Tr., at 41:22-42:5.]  Addressing Jardin's concern that Defendants would be permitted to begin discovery before Jardin, Judge Gallo ordered that no discovery will take place until Jardin answers the special interrogatory.[3]  [*See id.* at 38:16-39:15.]

---

[2] To be precise, Enea Teksci, Inc., was initially named as a defendant, but filed a counterclaim alleging trade secret misappropriation.  Because only the counterclaim is relevant here, for simplicity's sake, the Court will refer to Enea as a plaintiff.

[3] Judge Gallo also ordered that members of Jardin's legal team who had actual access to Defendants' confidential information in the 2008 case not take part in responding to the special interrogatory.  [*See* June 27 Hr'g Tr., 37:24-40:16, 43:19-23, 47:6-19.]  Nothing in the text of § 2019.210, however, speaks to which attorneys may participate in drafting a trade secret statement.

6

1    In short, Judge Gallo considered the parties' concerns, which happened to coincide with some
2 of the policy concerns underlying § 2019.210, and he ordered discovery procedures similar to those
3 that would be required under § 2019.210.  But this does not mean that Judge Gallo applied state law,
4 and, in fact, a careful review the order and the hearing transcript makes abundantly clear that he did
5 not.  [June 27 Hr'g Tr., at 37:18-38:3 (agreeing "wholeheartedly" with Plaintiff's counsel that
6 § 2019.210 should not be applied, but noting that the policy considerations underlying § 2019.210 are
7 relevant to this case).]  Rather, Judge Gallo considered the issues raised by the parties and ordered
8 procedures under "[Federal] Rule 26 and our local rules . . . to manage discovery in a way that ensures
9 fairness across the board."  [*Id.* at 38:5-7.]

10   Judge Gallo's order stemmed from his assessment of the particular facts before him and his
11 responsibilities and discretion under the Federal Rules of Civil Procedure, not a legal determination
12 that California Civil Procedure Code § 2019.210 should apply in federal court.  Accordingly, the Court
13 reviews Judge Gallo's order under the "clearly erroneous" standard.

14 **II.     Whether the Order Was Clearly Erroneous**

15   In ordering the procedures described above, Judge Gallo was guided by the Court's
16 responsibility and discretion under Federal Rule 26 to "manage discovery in a way that ensures
17 fairness across the board."  [*Id.* at 38:4-15, 43:1-12; *see also id.* at 15:9-14 (Plaintiff's counsel agrees
18 that Judge Gallo has "considerable latitude" in organizing, scheduling, and managing discovery under
19 the Federal and Local Rules).]  In deciding how to "ensure[] fairness across the board," Judge Gallo
20 took into account the concerns outlined by the parties, some of which align with the policy
21 considerations underlying California Civil Procedure Code § 2019.210.  [*See id.* at 16:13-16
22 (Defendants' primary concern is "to make the Plaintiff identify [the allegedly misappropriated
23 information] without the help or the assistance of having looked at all the information from the 2008
24 case); *id.* at 18:22-19:21, 30:1-8 (discussing possible prejudice caused to Plaintiff by requiring him to
25 specify the misappropriated information before additional discovery takes place); *id.* at 17:22-18:20,
26 21:15-23:9 (noting the need to better define the allegations of misappropriation); *id.* at 24:13-19
27 (noting the significance of Jardin's allegations of misappropriation to all of his legal claims).]
28

1    Judge Gallo did not abuse his discretion by considering any of the issues raised by the parties
2  or by ordering discovery procedures based on his assessment of the parties' concerns and the facts in
3  this case. That he ordered procedures similar to those that § 2019.210 would mandate in state court is
4  of no moment; the Federal Rules provide magistrate judges with broad discretion to manage discovery
5  based on the particular facts of the cases before them. *See, e.g.*, *Seattle Times*, 467 U.S. at 36 ("The
6  trial court is in the best position to weigh fairly the competing needs and interests of parties affected by
7  discovery. The unique character of the discovery process requires that the trial court have substantial
8  latitude [under Federal Rule 26(c)] to fashion protective orders.") (internal footnote omitted); *Little v.*
9  *City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling
10 discovery."); *Applied Materials*, 2008 WL 183520, at *1 & n.2 (ordering procedures nearly identical to
11 those ordered by Judge Gallo in this case through a Rule 26(c) protective order).
12   Jardin takes particular issue with the requirement that members of his legal team who had
13 access to Defendants' confidential information produced in the 2008 case not participate in responding
14 to Defendants' special interrogatory. Jardin argues "disqualification" of his desired counsel is a drastic
15 measure that will cause significant prejudice. In making this argument, however, Jardin apparently
16 misconstrues Judge Gallo's order. Judge Gallo did not contemplate disqualifying Jardin's 2008 legal
17 team from representing Jardin throughout this litigation. Rather, Judge Gallo ordered a limited and
18 temporary ethical wall, and expressly permitted lawyers in Robbins Geller who did not have *actual*
19 *access* to Defendants' confidential information in the 2008 case to respond to the special interrogatory.
20 Judge Gallo made clear during the hearing that he ordered the ethical wall in response to Defendants'
21 concern that Plaintiff's counsel could not divorce themselves from their knowledge of Defendants'
22 confidential material when identifying the information Defendant Frost allegedly misappropriated from
23 Jardin. [*See* June 27 Hr'g Tr., at 12:1-15, 17:22-1, 21:15-1, 40:3-19; *see also id.* at 16:13-16 (Defense
24 counsel explaining the specific nature of Defendants' concern regarding the confidential information
25 from the 2008 case).] In other words, Judge Gallo's order addressed the concern that Plaintiff's
26 counsel in the 2008 case simply cannot unring the bell. This was not an abuse of discretion. *See, e.g.*,
27 *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470-72 (9th Cir. 1992) (holding that a
28 protective order that shielded the plaintiff's in-house counsel from personal knowledge of the

defendant's trade secrets, but allowed plaintiff's counsel access to information through an independent consultant, was not abuse of discretion).

Nothing in Judge Gallo's order is clearly erroneous. The procedures Judge Gallo ordered are consistent with his responsibilities and discretion under the Federal Rules of Civil Procedure. Accordingly, Plaintiff's objection is **OVERRULED**.

## **CONCLUSION**

For the reasons stated above, Plaintiff's objection to Magistrate Judge Gallo's June 27, 2011 minute order is **OVERRULED**.

**IT IS SO ORDERED.**

**DATED:** 7/29/11

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**